[Civ. No. 26330. Third Dist. Jan. 15, 1987.]

CHRIS LEE BURNSED, Plaintiff and Respondent, v.
STATE BOARD OF CONTROL, Defendant and Appellant.

214

COUNSEL

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Paul H. Dobson, Deputy Attorney General, for Defendant and Appellant.

Daniel Robert Lang and Craig A. Paul for Plaintiff and Respondent.

OPINION

EVANS, Acting P. J.—This is an appeal by the California State Board of Control (Board) from a peremptory writ of mandate issued on the petition of Chris Lee Burnsed (Burnsed). The writ issued to command the Board to set aside its decision denying Burnsed's claim for restitution under the Victims of Violent Crime Act (the Act) (Gov. Code, § 13959 et seq.) and to award Burnsed the amount of his claim. The Board contends that in determining Burnsed's loss for the purpose of restitution under the Act, it properly offset the amount of lost wages by the amount of permanent disability payments Burnsed received under the Workers' Compensation Act. We agree and shall reverse the judgment.

FACTS

On July 1, 1984, while at his place of employment, Burnsed was assaulted and battered by two unknown assailants, causing him severe injuries. As a result of his injuries, Burnsed was unable to resume his regular gainful employment for a period of 23 weeks. Consequently he suffered a loss of employment income in the amount of $6,520.18.

Because Burnsed's injury occurred in the course and scope of his employment, he claimed benefits pursuant to the Workers' Compensation Act.[1] As a result of that claim Burnsed was awarded $5,196.73 in temporary disability benefits, and $2,240 as an advance on permanent disability benefits.

---

[1]Labor Code section 3200 et seq.

In August 1984 Burnsed filed an application for restitution with the Board pursuant to the Victims of Violent Crime Act for the unreimbursed portion of income lost as a result of his injuries. After a hearing, the Board concluded that Burnsed had no out-of-pocket loss of income because of the temporary and permanent disability benefits he received pursuant to the Workers' Compensation Act. Consequently, the Board denied Burnsed's application for restitution.

Burnsed then commenced this action seeking a writ of mandate to command the Board to set aside its decision and award him the amount of his claim. He contends the Board improperly offset the amount of his lost wages by the amount of permanent disability payments he received under the Workers' Compensation Act. The trial court agreed and granted the writ. This appeal by the Board follows.

## DISCUSSION

The victims of violent crimes program is designed to "assist residents of the State of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal acts." (Gov. Code, § 13959.) The program is administered by the State Board of Control which is authorized to adopt rules and regulations consistent with the law for the purpose of carrying into effect its provisions. (Gov. Code, § 13968.)[2]

Pursuant to the Act a victim of a crime may file an application for assistance with the Board. (Gov. Code, § 13961.) After hearing evidence relevant to the application, the Board is required to approve the application if a preponderance of the evidence shows that as a direct result of the crime the victim incurred an injury which resulted in a pecuniary loss. (Gov. Code, § 13964.)

A "victim" includes any resident of the State of California "who sustains injury or death as a direct result of a crime." (Gov. Code, § 13960, subd. (a)(1).) Government Code section 13960, subdivision (d), defines pecuniary loss to mean "any expenses for which the victim has not and will not be reimbursed from any other source."

The Board contends that permanent disability payments received pursuant to the Workers' Compensation Act constitute reimbursement for expenses from "any other source" within the meaning of Government Code section 13960, subdivision (d). Our purpose is to determine whether the

---

[2]The regulations of the Board are contained in the California Administrative Code, title 2, section 649 et seq.

Board's contention is consistent with the apparent legislative intent of that section.

■ The appropriate rules of statutory construction were set forth in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.]"

■ Furthermore, as a general rule of statutory construction, if a statute announces a general rule and makes no exception thereto, the courts can make none. (*Stockton Theatres, Inc.* v. *Palermo* (1956) 47 Cal.2d 469, 476 [304 P.2d 7].) A court may not insert into a statute qualifying provisions not intended by the Legislature and may not rewrite a statute to conform to an assumed legislative intent not apparent. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 674 [56 Cal.Rptr. 265, 423 P.2d 193].)

■ Webster defines the word "any" to mean "one indifferently out of more than two;" "one or another;" and "one, no matter what one." (Webster's New Internat. Dict. (3d ed. 1961) p. 97.) From the earliest days of statehood the courts have interpreted "any" to be broad, general, and all embracing. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056].) In *Davidson* v. *Dallas* (1857) 8 Cal. 227, 239, the Supreme Court declared the "word 'any' means every, and the expression 'for these purposes or any of them,' in effect reads: 'for the foregoing purposes and every of them.' " To the same general effect are *Estate of Wyman* (1962) 208 Cal.App.2d 489, 492 [25 Cal.Rptr. 280]; *Emmolo* v. *Southern Pacific Co.* (1949) 91 Cal.App.2d 87, 92 [204 P.2d 427]; and *Coelho* v. *Truckell* (1935) 9 Cal.App.2d 47, 59 [48 P.2d 697].

■ It thus appears the term "any other source" as used in subdivision (d) of section 13960 means "every other source," and that the Legislature intended that every other source of reimbursement of a victim's expenses be looked to before the victim is eligible for restitution under the victims of violent crime program. There is no specific exclusion of permanent disability benefits received pursuant to the Workers' Compensation Act. Therefore those benefits are clearly embraced within reimbursements from "any other source" as used in Government Code section 13960, subdivision (d).

■ ■ ■■ We find further support for this conclusion in the 1980 amendments to section 4903 of the Labor Code.[3] In 1980 the Legislature adopted an emergency loan procedure under the Victims of Violent Crimes Act. (Former Gov. Code, § 13961.1 as added by Stats. 1980, ch. 1370, p. 4965.) At the same time the emergency loan program was adopted, Labor Code section 4903[4] was amended to authorize the Workers' Compensation Appeals Board to allow as a lien against any sum to be paid as compensation under the Workers' Compensation Act the amount of any indemnification granted a victim pursuant to the Victims of Violent Crime Act.

■ As used in Labor Code section 4903, the phrase "any sum to be paid as compensation" means any benefit or payment under the Workers' Compensation Act (see Lab. Code, § 3207) and includes both temporary and permanent disability awards. (*Bryant* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 215, 223 [231 P.2d 32].)[5] Therefore the amount of indemnification a crime victim receives under the victims of violent crime program may be allowed as a lien against both temporary and permanent disability awards.

■ When subdivision (d) of Government Code section 13960 is read in light of Labor Code section 4903, subdivision (h), it is apparent that the Legislature intended both temporary disability and permanent disability awards under the Workers' Compensation Act to be considered in determining a victim's pecuniary loss. If the Workers' Compensation Appeals Board is permitted to allow amounts paid under the victims of violent crime program as a lien against temporary and permanent Workers' Compensation Act benefits, it follows that the Legislature intended that the Board of Control

---

[3]Burnsed contends that this court may not consider the possible implications of Labor Code section 4903 because that argument was not made to the trial court. However, the construction of statutes and the ascertainment of legislative intent are purely questions of law. This court is not limited by the interpretation of the statute made by the trial court, and may properly consider any matter which bears upon the issue. (*City of Merced* v. *State of California* (1984) 153 Cal.App.3d 777, 781 [200 Cal.Rptr. 642].)

[4]In relevant part Labor Code section 4903 provides as follows: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). If more than one such lien be allowed, the appeals board may determine the priorities, if any, between the liens allowed. The liens which may be allowed hereunder are as follows: . . . [¶] (h) The amount of indemnification granted pursuant to Article I (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code."

[5]The court in *Bryant* v. *Industrial Acc. Com., supra,* found that liens filed by the Employment Development Department for unemployment compensation disability benefits paid to an injured worker applied to both temporary and permanent disability awards. The Legislature subsequently amended Labor Code section 4904 to allow a lien for unemployment compensation disability benefits only when such benefits were paid for the same day or days of disability for which an award for temporary disability indemnity is made. (See *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 336, 345-347 [151 Cal.Rptr. 368].)

consider the amount of those awards in determining the pecuniary loss sustained by a victim for the purposes of the victims of violent crime program.

Burnsed contends, however, that permanent disability payments under the Workers' Compensation Act should not offset the wage loss he incurred as a result of the criminal incident because of the distinction that has been drawn between the nature and purpose of permanent and temporary workers' compensation disability benefits.[6] Burnsed's argument is more appropriately addressed to the Legislature. We have concluded that the Legislature had no apparent intent to exclude permanent disability benefits from consideration in determining the pecuniary loss of a victim under the victims of violent crime program. ▋ The sole judicial function is to enforce statutes as written. This court is without the authority to determine the wisdom, desirability, or propriety of statutes enacted by the Legislature. (*Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785].)

▋ In this case, Burnsed received temporary disability and permanent disability payments in excess of his out-of-pocket expenses. The Board properly determined that he was entitled to no award under the victims of violent crimes program. Therefore the trial court erred when it issued the writ of mandate commanding the Board to award Burnsed the amount of his claim.

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its peremptory writ and to enter a judgment denying Burnsed's petition.

**SPARKS, J.—**▋▋ I agree with the result reached in the lead opinion and with much that is asserted there. I write separately only to emphasize my view that the result is compelled by the lien statute.

This case turns on the interplay between the Victims of Violent Crime Act (Gov. Code, § 13959 et seq.; hereafter the Act) and the lien statute under the Workers' Compensation Act. (Lab. Code, § 4903.) The question is when a pecuniary loss is deemed to have been reimbursed. As defined in the Act, pecuniary loss "mean[s] any expenses for which the victim has not and will not be reimbursed from any other source. Losses shall include all of the

---

[6]In *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399 [71 Cal.Rptr. 678, 445 P.2d 294], the Supreme Court stated, "it must be recognized that there are substantial differences between the purposes and bases of the two benefits. The primary element of temporary disability is wage loss. [Citations.] . . . [¶] On the other hand, permanent disability is not based solely on loss of wages but is based both on actual incapacity to perform the tasks usually encountered in one's employment and on physical impairment of the body that may or may not be incapacitating. [Citations.]" (Pp. 403-404.)

following: ... [¶] (3) The loss of income or support that the victim has incurred or will incur as a direct result of an injury or death in an amount of more than one hundred dollars ($100) or equal to 20 percent or more of the victims' net monthly income, whichever is less, except that in the case of persons on fixed incomes from retirement or disability who apply for assistance under this article, there shall be no minimum loss requirement." (Gov. Code, § 13960, subd. (d).) The board contends that permanent disability payments under the Workers' Compensation Act constitute reimbursement for "expenses" from another "source" within the meaning of that statute. The board's general philosophy was recounted at the hearing this way: "It is money [that] the claimant receives as a result of the injury or incident that we're looking at. And it's at least been the position of this Board that if it is money, it is compensation. ... [The victim] got it as a result of the injury. We don't characterize it. ... [T]he general philosophy is, if the claimant has received money from another source, all we're here to do is, to the extent our law allows [it], reimburse them for things they've not been reimbursed for; not necessarily categorically but just generally."

Plaintiff counters by arguing that permanent disability benefits did not reimburse him for his past lost wages and consequently the board erred in denying his application. In view of Labor Code section 4903, I am persuaded that the board has the better argument.

Labor Code section 4903 provides in relevant part: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (i). ... [¶] (h) The amount of indemnification granted pursuant to Article 1 (commencing with Section 13959) of Chapter 5 of Part 4 of Division 3 of Title 2 of the Government Code." As the lead opinion notes, the phrase "any amount to be paid as compensation" means any benefit or payment under the Workers' Compensation Act and thus includes both temporary and permanent disability awards. (*Bryant* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 215, 223 [231 P.2d 32].) Consequently, if the victim here had first applied under the Act for reimbursement for his lost wages in the sum of $6,520.18 and if that application had been granted in full, then the State of California would have been accorded a lien upon any compensation (of whatever form) that the victim was later awarded under workers' compensation. Thus, if the victim had been awarded $5,198.73 in temporary disability benefits and $2,240 in permanent disability benefits, the state would be entitled to a lien against those awards in the sum of $6,520.18. the amount it paid under the Act. In short, the lien statute draws no distinction between temporary and permanent disability benefits. It follows then that if the victim applies first for workers' compensation and then files an application under the Act, the set off rights of the state must be equal to its

lien rights. Stated another way, the amount that the victim is entitled to recover under the Act cannot depend upon the order in which he seeks workers' compensation benefits. We are enjoined to construe every statute "with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].) That injunction compels a construction which avoids disharmonious results depending upon the happenstance of the order in which benefits are sought.

The upshot of all this is that when a victim receives any money from any source on account of the injuries suffered as the result of a crime, that sum must be deducted from his claim. Only the remainder, if any, is deemed under the statute to be "not . . . reimbursed from any other source." Since the victim here received more from other sources than he sought under the Act, he was not entitled to any reimbursement.

Sims, J., concurred.