[No. D004819. Fourth Dist., Div. One. Apr. 30, 1987.]

YOLANDA FIERRO, Plaintiff and Appellant, v.
STATE BOARD OF CONTROL, Defendant and Respondent.

COUNSEL

Thomas & Teaff and John H. Thomas for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Melvin R. Segal and Richard D. Garske, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**WORK, J.**—Yolanda Fierro, on behalf of her two children, appeals a judgment denying her petition for a writ of mandate directing the State Board of Control (Board) to set aside its denial and grant her children restitution

under the Victims of Violent Crime Act (Act). (Gov. Code,[1] § 13959 et seq.) The minors unsuccessfully contend the Board erred in finding Social Security benefits are reimbursement for the loss of a parent's support and in determining they are not entitled to recover the amount of lost parental support even if they have been reimbursed. Further, they unpersuasively claim public policy requires us to establish a rule analogous to the collateral source doctrine adopted in tort cases in determining whether restitution should be paid for crime victims pursuant to the Act. Accordingly, we affirm the judgment.

## I

Leonard Fierro was paying $100 per month to support each of his two minor children until he was murdered. After their father's death, each child began receiving $550 per month Social Security insurance benefits. The minors' application for restitution benefits under section 13959, to compensate for the loss of the $100 per month parental support payment, was denied by the Board. The Board reasoned the children suffered no *unreimbursed* loss of support as a result of their father's death because of the Social Security benefits. The children's writ of mandate to set aside the Board's order was denied.

## II

The Act requires the Board to approve a crime victim's application to obtain restitution for pecuniary losses as a direct result of a criminal act. Section 13960, subdivision (d), prescribes "pecuniary loss" to mean "any expenses for which the victim has not and will not be reimbursed from any other source." The minors hone in on the word "expenses" and contend loss of financial support is not an expense under the ordinary definition of the word. Because the condition of reimbursement is stated only in this definition of "pecuniary loss," they claim the Legislature did not intend to foreclose payments from the Victims of Violent Crime Fund for lost support claims even though the children were compensated for their loss of support from other sources. This contention ignores the plain meaning of the statute, as well as the purpose of the legislation.[2]

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] "The most fundamental rule of statutory construction is that 'the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The court first looks to the language of the statute, attempting to give effect to the usual, ordinary import of that language and seeking to avoid making any language mere

■ Section 13959 states: "It is in the public interest to assist residents of the State of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal acts." "Restitution" is defined as "the act of making good or compensating for loss, damage or injury; . . ." (American Heritage Dict. (New College ed. 1976) p. 1108.) One definition of "reimburse" is "to pay back or compensate (a person) for money spent, or losses or damages incurred." (*Id.* at p. 1097.) Here, the Social Security benefits received by the children are those which are payable only during minority and, thus, directly related to the recognized general need of children for support. Although these payments would be made even in cases where the children had not been receiving support from their deceased parent as well as by children who are not in need, these payments are *designed* to compensate for lost support. As such, they are compensation for the loss of support these minors incurred as a result of their father's death. Thus, by definition, further "restitution" would be duplicative.

### III

■ However, the minors alternatively argue that support is a type of pecuniary loss separate and apart from those expenses for which reimbursement will preclude recovery. They note the general language of section 13959 allows restitution for all pecuniary losses directly incurred as a result of criminal acts. Section 13960, subdivision (d) defines "pecuniary loss" as ". . . any expenses for which the victim has not and will not be reimbursed from any other source." It then states in part: "Losses shall include all of the following: (1) The amount of medical . . . expense . . . ; (2) The amount of mental health counseling related expenses . . . ; (3) *The loss of income or support* . . . ." (Italics added.) They argue that because subdivision (d)(3) specifically desig-

surplusage. Significance if possible should be attributed to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (*Ibid.*) '[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' (*Ibid.*) Further, wherever possible, the statute will be construed in harmony with the Constitution. (*California Housing Finance Agency* v. *Elliot* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193].) The provision must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. (*United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263]; *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) ' "The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction." ' (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110]; *United Business Com.* v. *City of San Diego, supra,* at p. 170.)" *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].)

nating loss of income or support as a type of pecuniary loss does not contain any requirement of nonreimbursement, there is no bar to duplicative recovery. This ignores the plain meaning of subdivision (d) which declares that the pecuniary loss designated in subdivision (d)(3) is one of the losses which is specifically *included* in the general definition of pecuniary loss. Although the loss of support did not seem to fall within the general definition of "expense" since it does not involve an expenditure, the Legislature clearly intended it to be one of the pecuniary losses defined in subdivision (d) and, therefore, subject to the reimbursement condition.

Moreover, the Act was not designed to compensate all victims of crime, but only to compensate those who had actually incurred specific financial losses. In doing so, the Legislature created a scheme requiring the trial court impose a restitution fine on a defendant who is convicted of a felony regardless of present ability to pay unless the court finds compelling and extraordinary reasons warranting waiver of the fine. Where the defendant is convicted of more than one felony, the court is required to impose a restitution fine of not less than $100, but not more than $10,000. (§ 13967, subd. (a); *People v. Downing* (1985) 174 Cal.App.3d 667, 672 [220 Cal.Rptr. 225].) Thus, a finite pool of money is available to which all crime victims who qualify may apply. To make this restitution fund meaningful, it must be limited to compensating financial losses not offset by support payments which would not have been received except for the criminal act. A plain reading of the legislation conforms to that practical result.[3]

## IV

■■■■■ Finally, the minors contend public policy requires us to draft a "collateral source" exception[4] to any reimbursement aspect of this legislation, relying on the declaration of section 13959 that the public interest is to assist state residents in obtaining restitution for pecuniary losses the direct result of criminal conduct. ■ However, it is presumed legislation is consistent with public policy. (*City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 [106 Cal.Rptr. 569].) Moreover, a constitutionally valid statute itself, enacted in response to current societal demands, serves as evidence of public policy. (2A Sutherland, Statutory Construction (4th ed. 1984) § 56.02, p. 629.) ■ Here, the Legislature has emphatically stated

---

[3]The potential financial crisis created by an increasing number of claims not being matched by increased revenues is discussed in the article *Surcharge Urged to Avert Shortfall In Crime-Victims Fund,* Los Angeles Daily Journal (Apr. 22, 1987) section I, page 2, column 2.

[4]The "collateral source rule" applied in tort cases is that ". . . if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *(Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398].)

restitution payments cannot be made for pecuniary losses which have or will be reimbursed from "any other source." (§ 13960, subd. (d).) The word "any" has consistently been interpreted as broad, general and all embracing. *(California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 195 [130 Cal.Rptr. 520, 550 P.2d 1056].) In fact, this phrase "any other source" has been judicially construed as meaning " 'every other source' and that the Legislature intended that every other source of reimbursement of a victim's expenses be looked to before the victim is eligible for restitution under the victims of violent crime program." *(Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 217 [234 Cal.Rptr. 316].) Since the Legislature is deemed to be aware of the collateral source doctrine in tort cases and has made no exceptions or specific exclusions, its failure to do so is presumed to be intentional. (See generally *In re Misener* (1985) 38 Cal.3d 543, 552 [213 Cal.Rptr. 569, 698 P.2d 637].)

Judgment affirmed.

Wiener, Acting P. J., and Butler, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 15, 1987.