[No. A055071. First Dist., Div. One. Apr. 1, 1993.]

COUNTY OF ALAMEDA et al., Plaintiffs and Respondents, v.
STATE BOARD OF CONTROL et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry Ullerich, Acting Assistant Attorney General, Jose R. Guerrero and Thomas P. Reilly, Deputy Attorneys General, for Defendants and Appellants.

Kelvin H. Booty, Jr., County Counsel, and Lorenzo E. Chambliss, Deputy County Counsel, for Plaintiffs and Respondents.

## OPINION

**STEIN, J.**—The State Board of Control and several of its members (hereinafter collectively referred to as the Board) appeal from a judgment compelling the Board to deem the cost of medical services provided to indigent crime victims at Highland General Hospital in the County of Alameda, a "pecuniary loss" as defined by Government Code section 13960, subdivision (d).

We will hold that neither the County of Alameda nor Don Perata, as a member of the board of supervisors and a county taxpayer, has standing to assert the claims of medically indigent crime victims for compensation from the Restitution Fund. We will further hold that the trial court erred in finding that medically indigent crime victims, who are provided medical services by the county hospital pursuant to Welfare and Institutions Code section 17000, have suffered a "pecuniary loss" within the meaning of Government Code sections 13959 and 13960.

### FACTS

On June 1, 1989, the County of Alameda and Don Perata, chairman of the county board of supervisors (hereinafter collectively referred to as the County) filed this complaint seeking injunctive and declaratory relief against the Board. The Board initially demurred to the complaint on the ground that the County lacked standing to assert the indigent crime victims' claims for payment from the Restitution Fund.[1] The court overruled the demurrer, and on September 12, 1989, the Board filed its answer.

The underlying facts are not in dispute:

Highland General Hospital is a public hospital owned and operated by the County. Welfare and Institutions Code section 17000 imposes upon the County an obligation to provide medical care to the indigent. Highland General Hospital annually receives approximately $15 million from the State of California through the Medically Indigent Services Account to defray the cost of providing medical care to these indigent patients. (See Welf. & Inst. Code, §§ 16702 and 16703.)

---

[1]The victims and the court below referred to the Restitution Fund as the "Victims of Crime Reimbursement Fund." We prefer to use the shorter statutory name, which is simply the "Restitution Fund." (Gov. Code, § 13960.1.)

When a patient is admitted to Highland General Hospital for treatment, the hospital staff typically makes a determination as to the patient's ability to pay. As the court explained in its statement of decision and order: "The first step in this process is to determine possible third-party payment sources, such as private health insurance, Medi-Cal, Medicare, Veterans' benefits, or some other 'third-party recovery' source. If the patient has no such source of coverage, hospital staff proceed to assess the patient's ability to pay a share of cost according to County Medical Services Program ('CMSP') guidelines, focussing on the monthly income of the patient's household. For patients determined to be 'indigent' under these guidelines, the Hospital's practice is to write off 100 percent of the hospital bill." Pursuant to Welfare and Institutions Code section 17403, the hospital has the right to assert future claims against these patients, if they subsequently acquire sufficient property to pay for the unpaid portion of the medical services they received and still meet their basic living expenses.

"If, however, the patient appears to be the victim of a crime, hospital staff do not attempt to assess the patient's monthly income or ability to pay. Instead, they view the [Restitution Fund] as a potential third-party recovery source and assist the patient in filing a claim for reimbursement . . . ."

"The practice of [the Board] is to process these claims as 'zero awards' under Title 2, California Code of Regulations, sections 649(e), 649.9(a)(5), 649.15 and 649.22." Pursuant to section 649.22 the Board processes a claim as a "zero award" "where the applicant fails to produce evidence of pecuniary loss." Processing a claim as a zero award does not constitute a denial of a claim. Instead, the Board makes an "initial determination of eligibility without reference to specific pecuniary loss." (*Ibid.*) "In the Board's view, the claims of indigent patients treated at county hospitals do not constitute 'pecuniary losses' to the patients within the meaning of Government Code section 13959, since the County has an obligation under Welfare and Institutions code section 17000 et seq. to provide this medical care to indigent patients. Therefore, in the Board's view, these applications are 'without verified pecuniary loss' within the meaning of California Code of Regulations, title 2, section 649.15. Alternatively, the Board views County CMSP funding as 'collateral benefits' as defined in California Code of Regulations, title 2, section 649(j). Accordingly, the Board believes that, under the provisions of section 649.17, indigent patients' claims must be 'zero awarded' until such time as the County makes a 'share of cost' determination under its CMSP guidelines. The County has records of 185

claimants with claims totalling $903,941.21 whose claims have been zero awarded in this way."[2]

"In the case of private hospitals, the Board's policy is to pay the treating hospital directly on approved Victims of Crime Program applications," unless the county is employing the hospital as a means of meeting its Welfare and Institutions Code section 17000 obligation to provide medical services to indigent patients.

The trial court found, based on these undisputed facts, that "notwithstanding Welfare and Institutions Code section 17000, there is an obligation of the indigent patient to pay the County for medical services rendered which arises when the services are rendered. The obligation becomes due upon the subsequent acquisition of property by the patient. Welfare and Institutions Code section 17403 is clearly based on a preexisting debt which is the basis for the obligation to satisfy the debt from after-acquired property. For this reason, the court concludes that bills for medical treatment rendered to indigent patients at county hospitals constitute pecuniary losses to these patients within the meaning of Government Code section 13959."

Based on these findings, the court granted the County's motion for summary judgment and entered judgment for the County providing declaratory and injunctive relief.

## I.

### STANDING

By this action the County is seeking to compel the Board to pay the claims of indigent crime victims for restitution equal to the cost of medical services

---

[2]The failure to assess the patient's ability to pay and to identify any other possible sources of payment is yet another reason why the Board "zero awards" these claims. Because the hospital staff does not follow its standard procedure in assessing a patient's ability to pay when the patient appears to be a victim of violent crime, it is not known how many of the victims whose claims have been "zero awarded" by the Board are in fact indigent, nor is it known whether any of these crime victims have any other source for payment of the claims. These applications therefore do not include essential information that the Board requires in determining whether the victim has a verified "pecuniary loss." The parties, however, assume, and so shall we, that the judgment is concerned only with the manner in which the claims of the medically indigent or those who are eligible for CMSP funding are processed by the Board. The parties do not dispute that any victim of crime who is not indigent or CMSP eligible is eligible for restitution for any medical bills that are not paid for by any other collateral source such as insurance, or Medi-Cal. A victim who is able to pay a "share of the cost" under the CMSP also may supplement his or her claim for restitution in an amount equal to the share of the cost, once the hospital makes a "share of the cost" determination under its CMSP guidelines.

provided by the county hospital pursuant to Welfare and Institutions Code section 17000. It is undisputed that none of the crime victims whose claims have been "zero awarded" are parties to this action. ■ The threshold question in this case, therefore, is whether the County of Alameda, or Don Perata in his capacity as a county taxpayer, has standing to assert the claims of these crime victims for compensation.

California Code of Civil Procedure section 367 provides that "[e]very action must be prosecuted in the name of the real party in interest." **(2a)** The real party in interest is one "having an actual and substantial interest in the subject matter of the action and who would be benefitted or injured by the judgment in the action." (*Friendly Village Community Assn., Inc.* v. *Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220, 225 [107 Cal.Rptr. 123, 69 A.L.R.3d 1142].) "[A]n action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law . . . will not be entertained; *and the same is true of a suit the sole object of which is to settle rights of third persons who are not parties.*" (*Golden Gate Bridge etc. Dist.* v. *Felt* (1931) 214 Cal. 308, 316 [5 P.2d 585].) ■ We shall conclude that neither the County of Alameda nor Don Perata has standing to assert the claims of crime victims for reimbursement from the Restitution Fund, because the substantive right to make a claim for restitution belongs only to a crime victim, not to a county hospital which has provided medical services pursuant to its independent obligation under Welfare and Institutions Code section 17000 to provide medical care for the indigent, nor to a county taxpayer, such as Don Perata.

■ "A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law." (*Killian* v. *Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) ■ The Victims of Violent Crime Act (Gov. Code, § 13959 et seq.) establishes "the procedure by which *crime victims* may obtain restitution through compensation from the Restitution Fund." (Gov. Code, § 13959, italics added.) Government Code Section 13960 defines a "victim" as "[a] person who sustains injury or death as a direct result of a crime," their dependents and, in the event of death, those who legally assume the obligation or voluntarily pay the victim's medical and burial expenses. The term "victim" does not include those who provide medical services to crime victims. In fact, the regulations adopted by the Board specifically provide that third party health care providers may not file claims for indemnification with the Board. (Cal. Code Regs., tit. 2, § 649.2.) Moreover, payments from the Restitution Fund may not be made directly to a health care provider without notice to the victim of his or her right to object to such direct payment. (Cal. Code Regs., tit. 2, § 649.18.)

Consistent with this strict definition of "crime victim," the courts, in the slightly different context of determining the validity of restitution ordered pursuant to Government Code section 13967, subdivision (c), have held that third parties, such as insurance companies and county agencies, who have suffered only indirect losses are not crime victims. (See, e.g., *People* v. *Blankenship* (1989) 213 Cal.App.3d 992 [262 Cal.Rptr. 141]; *People* v. *Miller* (1989) 216 Cal.App.3d 758 [265 Cal.Rptr. 77].)[3] The applicable statutory and regulatory scheme simply does not recognize the County of Alameda, nor Don Perata as a county taxpayer, as "the person possessing the right sued upon," because neither falls within the definition of a victim of crime. (*Killian* v. *Millard, supra,* 228 Cal.App.3d at p. 1605.) Indeed, when enacting the Victims of Violent Crime Act, the Legislature established an administrative scheme which includes a full administrative hearing and judicial review by writ of a victim's claim for restitution, which has been entirely circumvented in this case. (See Gov. Code, §§ 13961-13965; Cal. Code Regs., tit. 2, §§ 649.20, 649.21.) Government Code section 13959 specifically provides that "[t]his article shall govern the procedure by which *crime victims* may obtain restitution through compensation from the Restitution Fund." (Italics added.) The Board does not contend that there has been a failure to exhaust administrative remedies, apparently because the County has no right to file an administrative claim. Nothing in this administrative scheme, however, suggests that anyone other than a victim of crime has the substantive right of action.

We therefore conclude that both the County of Alameda and Don Perata lack standing to assert the claims of victims of crime from the Restitution Fund.[4]

■ Plaintiffs who attempt to assert or enforce the substantive rights of others are denied standing because they may be poor advocates for those

---

[3] We cite *Miller* for the proposition that a person who suffers only an indirect loss is not a "crime victim." The separate issue of whether a public entity is a "person" entitled to restitution under Government Code section 13967 is pending before the Supreme Court in *People* v. *Gregg* (1992), reprinted at 9 Cal.App.4th 814 [4 Cal.Rptr.2d 720] to permit tracking pending review. Our decision that County lacks standing because it is not a crime victim is not based on its status as a public entity, but rather on the indirect nature of the loss it has incurred.

[4] The Board contends that our Supreme Court's recent decision in *Kinlaw* v. *State of California* (1991) 54 Cal.3d 326, 336 [285 Cal.Rptr. 66, 814 P.2d 1308], is dispositive on the issue of standing. To the extent that the *Kinlaw* court implicitly relied on the rule that third parties should not have standing to assert the rights of the person with the substantive right of action, and that taxpayer standing pursuant to Code of Civil Procedure section 526a did not exist, it is illustrative of the principles we have applied in finding that the County of Alameda and Don Perata lack standing. However, the decision in *Kinlaw* did not rely on general principles of standing. Rather, it relied primarily upon the ground that the Legislature had established an administrative scheme for enforcement of the rights of counties, which expressly stated that it was the " 'sole and exclusive procedure by which a local agency or

rights, or they may have a conflict of interest with the nonparties whose rights are being asserted. These same principles underlie the rules requiring that indispensable parties be joined. (See, e.g., 13 Wright et al., Federal Practice and Procedure (2d ed. 1984) § 3531.9 at pp. 552-553, 567.) ▮ The Board argues that the crime victims whose claims for restitution have been "zero awarded" are indispensable parties. We agree. ▮▮▮

▮ A person is an indispensable party if his or her rights must necessarily be affected by the judgment. (*Hartman Ranch Co.* v. *Associated Oil Co.* (1937) 10 Cal.2d 232, 262 [73 P.2d 1163]; *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495, 501 [157 Cal.Rptr. 190].)[5]

▮ The County contends that because its interest is identical to that of the absent victims of crime, there is no risk of a collateral attack on the judgment by them. For the same reason the County contends the judgment does not damage any interest the absent crime victims may have that would not have been adequately litigated by the County. The County therefore concludes that it is possible to render an effective judgment in the absence of the indigent crime victims. To the contrary, a substantial conflict of interest does exist in this case: Government Code section 13965 limits the total amount of restitution available to each victim to $23,000 unless federal funding is available, in which case the limit rises to $46,000. If the County were to prevail in its efforts to have its cost of providing medical care to indigent victims reimbursed through the Restitution Fund, the limit of each victim's eligibility for restitution could be quickly exhausted.[6] Moreover, in order to prevail on the merits, the County must establish that the indigents whose claims for restitution have been zero awarded are currently indebted to the County for medical services they have received. Obviously, the indigent crime victims have no interest in establishing that they have incurred a debt to the County, and this issue should not be decided against them in their absence.

school district may claim reimbursement.' " (*Kinlaw, supra,* at p. 333, quoting Gov. Code, § 17552.)

[5]The contention that indispensable parties were not joined may be raised at any time. (See, e.g., *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 214 [137 Cal.Rptr. 118].) Where, as here, the issue is raised for the first time on appeal, "the only justification for invoking the rule would be that the trial court was unable to render an effective judgment between the parties before it." (4 Witkin, Cal. Procedure (3d ed. 1985) § 168(c).)

[6]On a larger scale, a basic conflict exists between the claims of the County and all victims of crime who are eligible for restitution: If the County of Alameda were to prevail, then undoubtedly every county would make similar claims against the fund for reimbursement of the cost of providing medical care to the subclass of indigents who happen to have been crime victims, and the fund would be quickly depleted. The fund is currently operating with a deficit and the claims the County of Alameda is attempting to assert would consume approximately 8 percent of the total assets of the fund.

 The stated purpose of the Restitution Fund is to assist victims of crime who suffer losses as a direct result of a crime, not to ameliorate the financial plight of the County in bearing the cost of providing medical care to the indigent. (Gov. Code, § 13959.) Neither the County of Alameda nor Don Perata has standing to seek injunctive or declaratory relief compelling the Board to process claims for restitution in any particular manner because they are not "crime victims" and have no substantive claim for restitution. (3c) Moreover, we hold that the indigent crime victims whose claims have been zero awarded are indispensable parties.

## II.

### MERITS[7]

 The dispositive question in this case is whether an indigent victim of crime who is treated at the county hospital, or a victim who is eligible for assistance through the CMSP, has suffered a "pecuniary loss" within the meaning of Government Code section 13960. That section defines "pecuniary loss" as "any expenses for which the victim *has not [been] and will not be reimbursed from any other source.*" (Italics added.) The Board interprets this section and the accompanying regulations to mean that an indigent crime victim treated at the County hospital has not suffered any "pecuniary loss" because the medical care received is a form of public assistance that the County has an independent duty to provide based on Welfare and Institutions Code section 17000, and because the CMSP is a collateral source of benefits.

 The Board's interpretation of statutes it is charged with enforcing and interpreting "is entitled to great weight and should be followed by a court unless clearly erroneous." (*Webster* v. *State Bd. of Control* (1987) 197 Cal.App.3d 29, 36 [242 Cal.Rptr. 685].) In order to assess the validity of the Board's interpretation of Government Code section 13960, subdivision (d), it is necessary briefly to: (1) explain the limited purpose of the restitution provided under the Victims of Violent Crime Act and (2) explain the nature and scope of the County's duty to provide medical care for the indigent pursuant to Welfare and Institutions Code section 17000.

---

[7]Although our conclusion that neither the County of Alameda nor Don Perata has standing to compel the Board to stop the practice of "zero awarding" the claims of indigent crime victims, who were treated at the county hospital, is sufficient ground for reversal of the judgment, we shall nonetheless exercise our discretion to reach the merits of the lawsuit. The issue has been fully litigated and briefed and a determination of the legal issue raised will serve the interests of judicial economy in the event that, for any reason, our holding on the issue of standing is overturned. (See *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 454 [279 Cal.Rptr. 834, 807 P.2d 1063]; see also *Madera Community Hospital* v. *County of Madera* (1984) 155 Cal.App.3d 136, 149 [201 Cal.Rptr. 768].)

█ A review of the legislative scheme and the cases interpreting the term "pecuniary loss" as used in Government Code section 13960, subdivision (d), discloses that the legislative intent was not "to compensate all victims of crime, but only to compensate those who had actually incurred specific financial losses." (*Fierro* v. *State Bd. of Control* (1987) 191 Cal.App.3d 735, 740 [236 Cal.Rptr. 516].) Recovery from the fund is limited to those victims who can prove that they have suffered an actual out-of-pocket loss for which they will not be compensated from any other source. The fund is intended to be the source of last resort for victims of crime, and *every other* collateral source of compensation must be exhausted before a victim of crime can be said to have suffered a "pecuniary loss." (See, e.g., *Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 217 [234 Cal.Rptr. 316] [court held that the term "any other source" as used in Gov. Code, § 13960, subd. (d), means "every other source," and that the Legislature intended that every other source of reimbursement, including workers' compensation benefits, must be used before resort to the restitution fund]; *Webster* v. *State Bd. of Control, supra,* 197 Cal.App.3d at p. 38 [victim failed to prove "pecuniary loss" where losses already reimbursed by workers' compensation and Social Security benefits].) In effect, the fund operates as a kind of safety net for victims of crime who suffer losses for which there is no other public or private source of compensation.

Consistent with this legislative intent, the Board concludes that a victim suffers a pecuniary loss when he or she (1) has an "out of pocket loss" because he or she has paid or is legally responsible for paying an expense incurred as a direct result of a crime; and (2) there are no other "collateral benefits" available to the victim. (Cal. Code Regs., tit. 2, §§ 649.9, subd. (a)(5), and 649, subd. (j).) The term "collateral benefits" is broadly defined as including, but not limited to: "(1) All forms of private and public insurance benefits paid to or on behalf of the insured victim or his or her survivors, including medical, disability, wage loss, liability and casualty insurance including vehicle, commercial, and residential insurance. [¶] (2) all forms of public and private assistance paid to, or on behalf of, the victim or his or her survivors, including Medi-Cal, social security, state disability insurance, Worker's Compensation and Medicare. [¶] (3) Any restitution paid by the criminal perpetrator directly to the victim or his or her survivors, whether collected by public agencies and paid over to the recipient or collected directly by the recipient." (Cal. Code Regs., tit. 2, § 649, subd. (j).)

█ In accordance with these regulations, the Board reasons that indigent crime victims treated at the county hospital have suffered no documented pecuniary loss because public assistance is available as a "collateral source" to these victims based either upon the duty of the County, pursuant

to Welfare and Institutions Code section 17000, to provide medical care for the indigent, or the availability of the county medical services program through which the State of California assists the counties in meeting their obligations to provide medical services to the indigent. (See *Cooke* v. *Superior Court* (1989) 213 Cal.App.3d 401, 411 [261 Cal.Rptr. 706].)

Welfare and Institutions Code section 17000 imposes a mandatory duty upon all counties to provide "medically necessary care," not just emergency care. (*Bay General Community Hospital* v. *County of San Diego* (1984) 156 Cal.App.3d 944, 957 [203 Cal.Rptr. 184].) The County must fulfill this obligation without regard to its fiscal plight. (See, e.g., *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 217 [211 Cal.Rptr. 398, 695 P.2d 695]; *Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 680 [94 Cal.Rptr. 279, 483 P.2d 1231]; *Nelson* v. *Board of Supervisors* (1987) 190 Cal.App.3d 25, 29 [235 Cal.Rptr. 305]; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 46-47 [128 Cal.Rptr. 712].) Moreover, pursuant to Welfare and Institutions Code section 16704.1, "[n]o fee or charge shall be required of any person before a county renders medically necessary services to persons entitled to services . . . under section 17000."[8] Therefore, on its face, an indigent who receives medically necessary care at a county hospital is the recipient of "public assistance" pursuant to Welfare and Institutions Code section 17000 and, therefore, has not suffered a pecuniary loss within the meaning of Government Code section 13960.

The trial court, nonetheless, found, based on Welfare and Institutions Code section 17403, that the indigent patient does suffer a "pecuniary loss" because he or she becomes indebted to the County at the time the services are provided. Welfare and Institutions Code section 17403 provides: "*If* a person for the support of whom public moneys have been expended acquires property, the county shall have a claim against him to the amount of a reasonable charge for moneys so expended . . . ." (Italics added.) The cases interpreting section 17403 have held that the right to reimbursement under this section does not arise *unless and until* the recipient has acquired sufficient property, *after* the receipt of assistance, such that he or she can support self and family, and still reimburse the county.

In *County of San Diego* v. *Muniz* (1978) 22 Cal.3d 29 [148 Cal.Rptr. 584, 583 P.2d 109], the court addressed the question whether the county, pursuant to Welfare and Institutions Code section 17403, had a claim for reimbursement against the wages of a former recipient of general assistance based

---

[8]Welfare and Institutions Code section 14059.5 defines a service as "medically necessary" when it is "reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."

solely on the allegation that he had been gainfully employed for one year. The primary issue before the court was whether wages were a type of "property" within the meaning of section 17403. However, in the course of its analysis the court also explained the limited scope of the county's potential reimbursement under that section: "At common law, in the absence of fraud in procuring relief, a recipient was under no obligation to repay the government agency disbursing the charity. The recovery provision in section 17403 for general assistance payments constitutes a statutory change to this long standing common law rule, and defines the extent of the County's authority to enforce payment. The legislative history of section 17403 itself, however, seems inconclusive as to the scope of the legislative change intended. The provision appears to relate originally to the Poor Law of 1901, providing that '. . . [i]n case such [poor, indigent, incompetent, or incapacitated] person shall be or shall thereafter become the owner of property real, person, or mixed, . . . the district attorney . . . [shall] cause the . . . support . . . of [the] person to be made out of such property . . . .' This language emerges subsequently in section 17403 as the requirement that a later acquisition of property may form the basis for a county's claim for reimbursement." (22 Cal.3d at p. 33, citations omitted.) The court ultimately concluded that " 'property' in section 17403 does not include wages per se, but only includes any surplus retained by the recipient after meeting the support needs of himself and his family. *Until that level is reached, the County's claim does not arise.*" (*Id.* at p. 37, italics added, fns. omitted.) Following *Muniz*, the court in *Reyes* v. *Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1273, footnote 8 [242 Cal.Rptr. 339], described San Diego County's attempt to characterize general relief benefits as debts to the county as "doubtful . . . [S]ection 17403 provides the County with a claim against one [] whom the County supported with public funds *only if* the former recipient has later acquired property in excess of personal and familial support needs." (Italics added; see, also, *Collins* v. *Woods* (1984) 158 Cal.App.3d 439, 445 [204 Cal.Rptr. 650] [court described *Muniz* as imposing a *condition precedent* on a county's claim for reimbursement].)

Thus, an indigent who receives medical services at a county hospital simply has no present legal obligation to repay the county. Any obligation to reimburse does not arise *unless and until* the indigent subsequently acquires property within the meaning of Welfare and Institutions Code section 17403. No evidence has been offered by the County that any of the crime victims whose claims were zero awarded have acquired property within the meaning of section 17403, nor does the County assert any present intention to initiate

any action against them.[9] These victims who have received medical care at the county hospital pursuant to Welfare and Institutions Code section 17000 suffer no "pecuniary loss" because they, like the victim who receives Medi-Cal, workers' compensation or Social Security benefits, have a "collateral source" for payment of the medical care, i.e., the provision of such care by the County pursuant to section 17000.

The County insists that this interpretation of its duty under Welfare and Institutions Code section 17000 discriminates unfairly against public hospitals because the Board considers the medical bills for services provided to an indigent treated at a private hospital that does not contract with the County to provide medical services pursuant to section 17000, as a "pecuniary loss," and pays them on behalf of the victim. The premise of the County's argument is that the duty of private hospitals to provide medical care to indigents imposed by Health and Safety Code section 1317[10] is identical to the County's duty. The critical difference, however, is that although a private hospital must render *emergency* services "without first questioning the patient or any other person as to his or her ability to pay therefor . . . the patient or his or her legally responsible relative or guardian *shall* execute an agreement to pay therefor or otherwise supply insurance or credit information promptly after the services are rendered." (Health & Saf. Code, § 1317, subd. (d), italics added.) Thus, a private hospital has a more limited duty to provide only "emergency care" and is not restricted, except for the application of general laws applicable to all creditors protecting certain property of debtors from execution, in its legal right thereafter to collect the bill for services rendered.

We conclude that the trial court erred in finding, based on Welfare and Institutions Code section 17403, that indigent crime victims incur a debt to the County when they receive medical care as required by Welfare and

---

[9]In opposition to the County's motion for summary judgment, the Board pointed out that the effect of "zero awarding" the claims of indigent crime victims does not preclude a later award upon submission of proof of an actual pecuniary loss. "If the Board subsequently receives 'fully verified evidence of pecuniary loss by the victim' and determines that 'no other source of benefits or assistance is available to the victim to compensate for this loss,' it can then authorize a monetary award . . . Thus, in the unlikely event that one of Highland Hospital's indigent patients actually did acquire property sufficient to permit Alameda County to assert a claim against him under Welfare and Institutions Code section 17403, the patient could then seek reimbursement from the Restitution Fund to compensate for this expense."

[10]Health and Safety Code section 1317, subdivision (a) states: "Emergency services and care shall be provided to any person requesting the services or care . . . for any condition in which the person is in danger of loss of life, or serious injury or illness, at any health facility licensed under this chapter that maintains and operates an emergency department to provide emergency services to the public when the health facility has appropriate facilities and qualified personnel available to provide the services or care."

Institutions Code section 17000. The Board correctly asserts that victims of crime who are also medically indigent and receive medical care at either a county hospital or a private hospital that has contracted with the county to provide medical care to the indigent, are the recipients of public assistance, which is in effect a collateral source of payment. Therefore, these victims of crime have not suffered an actual pecuniary loss.

This interpretation of Government Code section 13960 is consistent with legislative intent that the Restitution Fund be a source of last resort for compensation to a crime victim for actual pecuniary loss. Absent the existence of the Restitution Fund, the County would nonetheless have an independent duty pursuant to Welfare and Institutions Code section 17000 to provide medically necessary care to indigents. Welfare and Institutions Code section 17403 does not create a legal obligation for the indigent to reimburse the County for the cost of providing that care unless and until the indigent subsequently acquires sufficient property to provide support for self and family and still have a surplus from which the County could be reimbursed.

If the County were to prevail in this action, the Restitution Fund would be converted from its intended role as a safety net for victims of crime who have suffered an actual pecuniary loss into an alternate source of funding for the County to help defray the cost of caring for medically indigent adults. Although we sympathize with the fiscal plight of the County, we are satisfied that the Restitution Fund was established for the purpose of compensating victims of crime for their actual losses incurred as the result of a crime, not as a source of defraying the County's cost of performing its duty to care for the indigent pursuant to section 17000. Absent a legislative amendment to the Victims of Violent Crime Act expressing a contrary intent, we shall uphold the Board's procedure for processing the claim of indigent crime victims treated at the county hospital or by a private hospital contracting with the County to provide medical care pursuant to Welfare and Institutions Code section 17000 as consistent with the intent of the Legislature.

## CONCLUSION

The judgment is reversed. Costs are awarded to appellant.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied May 3, 1993, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied June 24, 1993.