TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1208 |
| of | : | |
| | : | May 30, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| MAXINE P. CUTLER | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE FRED AGUIAR, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. May law enforcement officers be compensated under the victims of crime program for injuries sustained while performing official duties?

2. If law enforcement officers may be compensated under the victims of crime program, are their claims to be treated differently from the claims of other victims?

CONCLUSIONS

1. Law enforcement officers may be compensated under the victims of crime program for injuries sustained while performing official duties.

2. Under the victims of crime program, the claims of law enforcement officers are not to be treated differently from the claims of other victims.

1.                                                        94-1208

ANALYSIS

The California Victims of Crime Act (Gov. Code, §§ 13959-13969.3; "Act")[1] was enacted in part to provide monetary assistance when residents of California suffer injury or death as a direct result of criminal conduct. (§ 13960, subd. (a).) The program is administered by the State Board of Control ("Board"), which is directed to approve compensation applications "if a preponderance of the evidence shows that as a direct result of the crime, the victim or a derivative victim incurred an injury which resulted in a pecuniary loss." (§ 13964.)[2] Claims are paid from a restitution fund containing fines assessed against criminal defendants. (§ 13969; see 77 Ops.Cal.Atty.Gen. 180, 181, fn. 2 (1994).) The two questions presented for resolution concern applications for compensation filed with the Board by law enforcement officers.

1. Eligibility of Law Enforcement Officers

We are first asked whether law enforcement officers injured while performing official duties[3] may receive benefits under the Act for injuries sustained. We conclude that they may recover for their pecuniary loss in such circumstances.

In analyzing this question, we may rely upon several principles of statutory interpretation. "In construing a statute, our principal task is to ascertain the intent of the Legislature." (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989.) "We do so by first turning to the words themselves, giving them their ordinary meaning. [Citations.]" (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071.) "`[W]hen statutory language is . . . clear and unambiguous there is no need for construction . . . .'" (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73.) A "`court has no power to rewrite the statute so as to make it conform to a *presumed* intention which is not expressed' . . . [also,] [t]he sweep of a statute should not be enlarged by insertion of language which the Legislature has overtly left out . . . ." (*People* v. *Branno* (1973) 32 Cal.App.3d 971, 977; see also *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.) "When the Legislature `has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' . . ." (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 576.)

The declared purposes of the Act are stated in section 13959, which provides:

"It is in the public interest to assist residents of the State of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal

---

[1]All references hereafter to the Government Code are by section number only.

[2]As defined in the Act (§ 13960, subd. (a)(2)), a "derivative victim" is a member of the victim's family or financially dependant upon the victim.

[3]With respect to injuries sustained by an officer while *not* acting within the scope of his or her employment, it is conceded that the officer would be eligible for compensation under the terms of the program.

acts. This article shall govern the procedure by which crime victims may obtain restitution through compensation from the Restitution Fund."

The term "victim" for purposes of the Act is defined in section 13960, subdivision (a)(1) as follows:

"`Victim' means a resident of the State of California, a member of the military stationed in California, or a family member living with a member of the military stationed in California who sustains injury or death as a direct result of a crime."[4]

Section 13960.2, subdivision (a) states:

"Notwithstanding Section 13960, for purposes of this article, `victim` does not include any person who is convicted of a felony until that person has been discharged from probation or has been released from a correctional institution and has been discharged from parole, if any. . . ."

Section 13960.5 additionally provides:

"(a) Notwithstanding Section 13960, `victim' shall also include nonresidents of this state who suffer injury or death as a direct result of crimes occurring within the state.

"(b) This section shall be operative only during those time periods during which the board determines that federal funds are available to the state for the compensation of victims of crime."

Section 13960 generally defines a "victim" for purposes of the Act as one who is a California resident. We find the language of the statute to be clear and unambiguous with respect to its application to law enforcement officers. It does not exclude such officers, while certain other residents are specifically excluded by the Legislature. There is nothing illogical or unreasonable in finding that a law enforcement officer may sustain "injury or death as a direct result of a crime" while performing official duties.

In contrast to the provisions of the Act, the Legislature has specifically excluded law enforcement officers from the compensation provisions of a related statutory scheme. Under the Good Samaritan Act (§§ 13970-13974.1), persons may be compensated for injury, death, or damage sustained while preventing the commission of a crime, apprehending criminals, or rescuing a person in danger, when not compensated under the provisions of the Act. (§ 13970.) Expressly excluded from this compensation program are: "a peace officer, fireman, lifeguard, or person whose employment includes the duty to protect the public safety acting within the course and scope of such employment." (§

---

[4]The definition of "victim" contained in section 13960 does not control the Legislature's use of the term in section 13967, subdivision (c), concerning the payment of restitution by a criminal defendant who has been denied probation. (*People* v. *Crow* (1993) 6 Cal.4th 952, 560; *People* v. *Broussard*, *supra*, 5 Cal.4th at 1072.)

13971.)  Had the Legislature intended to exclude law enforcement officers from the compensation provisions of the Act, it easily could have done so as it did in similar legislation.[5]

We reached the same conclusion in an informal letter opinion issued in 1974 (Cal.Atty.Gen., Indexed Letter, No. 74-34 (March 4, 1974)).  We stated:

"Government Code section 13961 provides as follows:

"`A victim of a crime as used in this chapter is <u>any</u> <u>person</u> who sustains injury to himself, or pecuniary loss as a result of physical injury or death of another person on whom he is financially dependent, and which is the consequence of an act considered to be a public offense, as defined by Penal Code section 15, whether the actor is criminally liable or not.'  (Emphasis added.)

"It is clear from the language of Government Code section 13961, <u>supra</u>, that the Legislature did not intend to exclude law enforcement personnel or their financial dependents from the purview of the victim program, as the statute by its terms applies to <u>any</u> <u>person</u> who is a victim of a crime.  A basic precept of statutory construction is that if the words of a statute are clear, the tribunal charged with interpreting the statute may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.  45 Cal.Jur.2d section 105, p. 619; <u>People</u> v. <u>Knowles</u> (1950) 35 Cal.2d 175.

"It should be noted that the definition of victim has been reenacted substantially without change in section 13960 of S.B. 149 which supersedes the present statute (effective July 1, 1974).  Since neither the present act or its successor has placed any qualification upon the definition of a victim within the meaning of the act, it must be conclusively presumed that the Legislature intended that no such qualification should be grafted onto the statute by judicial or quasi-judicial interpretation.

"It should be noted also that the companion act to the Victim of Violent Crime Act, the `Good Samaritan Act' (Government Code section 13970 et seq.), specifically excludes from eligibility law enforcement personnel and `other persons whose employment includes the duty to protect the public safety' (Government Code section 13971).  The Legislature was therefore aware of the special consideration associated with the inclusion of law enforcement officers as potential claimants under the two acts, and chose to exclude them from participation in the Good Samaritan Program but not in the Victim of Violent Crime Program.  It is apparent, therefore, that law enforcement officers and their families are eligible to receive benefits under the Victim Program."  (Fn. omitted.)

_____

[5]Although the chapter heading for the Act (article 1) and Good Samaritan Act (article 2) is denominated "Indemnification of Private Citizens," the Supreme Court has recently reaffirmed that "`[t]itle or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute.  [Citations.]'"  (*People* v. *Wheeler* (1992) 4 Cal.4th 284, 293-294.)

In the past 20 years, the Legislature has amended the statute defining the term "victim" on numerous occasions and has continued to use broad language that does not exclude law enforcement officers. (See, e.g., Stats. 1985, ch. 1130, § 4; Stats. 1987, ch. 1357, § 2; Stats. 1989, ch. 515, § 1; Stats. 1992, ch. 682, § 1; Stats. 1994, ch. 1242, § 1.)

In answer to the first question, therefore, we conclude that law enforcement officers may be compensated under the victims of crime program for injuries sustained while performing official duties.[6]

2. Amount of Compensation For Law Enforcement Officers

The second question presented concerns whether the compensation application of a law enforcement officer is to be treated differently under the Act from the applications of other victims. We conclude that all applications are to be treated the same by the Board.

Under the terms of the Act, a victim suffers a pecuniary loss for which compensation is to be granted when he or she has suffered an actual out-of-pocket expense as a direct result of a crime for which he or she will not be compensated from any other source. (*County of Alameda* v. *State Board of Control* (1993) 14 Cal.App.4th 1096, 1107; *Burnsed* v. *State Bd. of Control* (1987) 189 Cal.App.3d 213, 217.) "Pecuniary loss" includes loss of income or support and medically related expenses, including in-patient and out-patient mental health counseling expenses necessary as a direct result of the crime. (§ 13960, subd. (d).)

Significantly, the restitution fund administered by the Board is a source of last resort and every other collateral source of compensation must be exhausted before a crime victim is considered to have suffered a pecuniary loss. (*County of Alameda* v. *State Board of Control*, *supra*, 14 Cal.App.4th at 1107, 1111; see *Fierro* v. *State Bd. of Control* (1987) 191 Cal.App.3d 735, 740.) Collateral benefits received from other sources include, but are not limited to, all forms of private and public insurance (medical, disability, wage loss, liability and casualty); all forms of public and private assistance (Medi-Cal, social security, state disability, worker's compensation, and Medicare); and any amounts of restitution paid directly by the criminal defendant. (*County of Alameda* v. *State Board of Control*, *supra*, 14 Cal.App.4th at 1107.)

It may well be that a law enforcement officer, just as any other claimant, may obtain "collateral benefits" for the injuries sustained. (See, e.g., Lab. Code, § 4850.) To the extent that law enforcement officers receive benefits reimbursing them for their out-of-pocket expenses, any benefits available from the Board would be reduced. (See *Burnsed* v. *State Board of Control*, *supra*, 189 Cal.App.3d at 219.)

---

[6]Since we conclude that law enforcement officers are eligible under the program, the "derivative victims" of such officers would also be eligible.

We reached the same conclusion in our 1974 informal opinion (Cal.Atty.Gen., Indexed Letter, No. 74-34, *supra*) regarding the Board's treatment of claims submitted by law enforcement officers. We stated:

"Claims filed pursuant to Government Code section 13960 et seq. by law enforcement officers or their financial dependents should be treated in the same manner as claims by private citizens because the provisions of the statute relating to subrogation of rights provide an adequate safeguard against double recovery by the claimant whether or not he is a law enforcement officer. Government Code section 13963 provides in pertinent part:

"`A claim shall be reduced to the extent that the claimant has received indemnification from any other source. If a claim is paid under this chapter the state shall be subrogated to the rights of the claimant to who such claim was paid against any person causing the damage or injury for which payment was made to the extent of the payment of the claim. The state may recover the amount of the claim paid in a separate action, or may intervene in an action brought by the claimant.'

"Law enforcement officers injured in the course and scope of their employment are covered by the Workmen's Compensation provisions of the Labor Code. If the Workmen's Compensation award is reduced to a final settlement at the time the claim is heard by the State Board of Control, the Board may, as has been its practice, adjust the award made pursuant to the victim program accordingly. If, on the other hand, no final disposition has been achieved in the Workmen's Compensation proceeding, the Board may make its award contingent on claimant's agreement to a lien on the expected Workmen's Compensation benefits. Similarly, if a civil action against the perpetrator of the crime or some third party is contemplated, a lien agreement may be obtained pursuant to Government Code section 13963 and filed with the appropriate court.

"This in fact has been the practice of the Board in claims brought by private citizens who are not law enforcement officers that have Workmen's Compensation or civil actions pending as a result of the injury they sustained. It has proven to be an adequate assurance against double recovery by the private claimant and there is nothing to indicate that this would not be true of the claimant who is a law enforcement officer as well."

In answer to the second question, therefore, we conclude that under the victims of crime program the claims of law enforcement officers (and persons dependent upon them for support) are not to be treated differently from the claims of other victims.

* * * * *