Filed 9/19/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| CALIFORNIA GROCERS ASSOCIATION, | | C070007 |
| Petitioner, | | C070375 |
| v. | | |
| DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., | | |
| Respondents. | | |

ORIGINAL PROCEEDINGS in mandate. Petitions granted and denied.

Pillsbury Winthrop Shaw Pittman, James M. Seff, Christopher R. Rodriguez and Carrie L. Bonnington for Petitioner.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Senior Assistant Attorney General, Fiel D. Tingo, Supervising Deputy Attorney General and Michael D. Gowe, Deputy Attorney General, for Respondents.

This case involves the meaning of section 23394.7 of the Business and Professions Code, that regulates the sale of alcoholic beverages at any customer-operated checkout

1

stands.[1]  It provides:  "No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee's physical premises."  (§ 23394.7, as added by Stats. 2011, ch. 726, § 2.)  The principal question tendered is whether "customer-operated checkout stand" refers to the stand itself or to the function performed at the stand, and, accordingly, whether the members of petitioner California Grocers Association (Grocers) may sell alcoholic beverages at such a stand.

Grocers invokes our original jurisdiction in two writs of mandate to review the validity of an advisory issued by the respondent Department of Alcoholic Beverage Control (Department).  (§ 23090.5.)  The advisory interprets section 23394.7 as providing that "no alcoholic beverages may be sold through any checkout stand that is enabled to allow operation by the customer at the time the customer's check-out transaction commences or at any point during the check-out process."

The writ in case No. C070007 challenges the Department's compliance with the Administrative Procedures Act (Gov. Code, §11340 et seq.; hereafter APA).  The APA sets forth procedures for the adoption of an administrative regulation and provides that a failure to do so voids the agency action.  (Gov. Code, § 11340.5 subd. (a).)  A regulation is inter alia a general rule that interprets the law enforced by the agency.  (Gov. Code, § 11342.600; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 (*Tidewater*).)  An interpretation is subject to the APA unless it is "essentially rote, ministerial, or . . . repetitive of . . . the [law's] plain language."  (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336-337 (*Morning Star*).)  A rule that violates the APA is void regardless that its interpretation is a correct reading of the law. (*Morning Star, supra*, at pp. 336-337.)

---

[1]  A reference to a section is to the Business and Professions Code unless otherwise specified or apparent from the context.

We shall conclude that the advisory is a regulation subject to the APA because it is directed to the general class of retail off-sale liquor licensees that employ checkout stands and because its interpretation of section 23394.7 is not "essentially rote, ministerial, or . . . repetitive . . . ." (*Morning Star, supra*, 38 Cal.4th at p. 337.) This conclusion requires that we void the advisory.

However, this does not end our inquiry. "[A]lthough the court must void an interpretive regulation that does not comply with the APA procedures, it may resolve the ambiguity that gave rise to the agency interpretation if it is not required to defer to the agency construction." (*Capen v. Shewry* (2007) 155 Cal.App.4th 378, 391.) As we explain below, we need not defer to the Department's interpretation because the interpretation of section 23394.7 is well within the court's competence.

The writ in case No. C070375 challenges the validity of the advisory as a violation of section 23394.7. The advisory describes a "customer-operated checkout stand" as a physical device that may be operated in whole or in part by a customer. It expresses the interpretive view of the Department that section 23394.7 prohibits the sale of alcoholic beverages at such a checkout stand even if the sale is approved by an employee of the licensee in a face-to-face transaction.

Grocers argues that a checkout stand that is programmed to lock the stand's mechanism when an alcoholic beverage is scanned, and that can be unlocked only by an employee of the licensee after a face-to-face approval of the sale, complies with section 23394.7. Resolution of the claim turns on whether section 23394.7 refers to the checkout stand itself or the function performed at the stand. We find the answer in the grammar of the section.

Section 23394.7 prohibits the sale of alcoholic beverages "*at* any customer-operated checkout stand . . . ." (Italics added.) The "at" refers to the checkout stand itself, and "customer-operated" modifies the term "checkout stand." The phrase "customer-operated checkout stand" thus describes the <u>kind</u> of checkout stand "at" which

3

the sale of alcoholic beverages is prohibited. By contrast, section 23394.7 does not use qualifying words that specify the function performed by the checkout stand, such as "when" or "by whom" the checkout stand is operated or "unless" a lock-out system is employed. Grocers argues that under section 23394.7 the exercise of privileges under an off-sale license occurs only at the point of sale of the alcohol and that occurs only when an employee authorizes the sale to proceed at a customer-operated checkout stand. Accordingly, at the point of sale the stand is not functioning as a customer-operated checkout stand. The argument is not responsive to the language of section 23394.7.[2] It makes no difference at what point the sale occurs in the checkout procedure since section 23394.7 bars any sale "at" a customer operated checkout stand. This view is amply supported by the legislative history of the section, as we explain below.

We shall grant the writ in case No. C070007 because the advisory is more than a simple paraphrase of section 23394.7. We shall deny the writ in case No. C070375 because we find that the advisory correctly interprets section 23394.7. A sale "at" a "customer-operated checkout stand" unambiguously refers to a kiosk, a device that may be physically operated in whole or part by a customer.

Procedure

Grocers filed two petitions for a writ of mandate[3] and an allied complaint for declaratory relief invoking our original jurisdiction under section 23090.5.[4] (*Schenley*

---

[2] Petitioner's motion in support of request for judicial notice filed in case Nos. C070007 and C070375 on June 5, 2012, are denied.

[3] Code of Civil Procedure section 1085.

[4] Section 23090.5 provides in relevant part: "No court . . . except the Supreme Court and the courts of appeal . . . shall have jurisdiction to review . . . any order, rule, or decision of the department . . . but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case."

*Affiliated Brands Corp. v. Kirby* (1971) 21 Cal.App.3d 177.) We shall consider only the petitions for extraordinary relief.[5]

The writs seek different forms of relief. In case No. C070007 Grocers seeks the invalidation of the advisory on the ground its adoption did not comply with the procedural provisions of the APA. In case No. C070375 Grocers seeks the invalidation of the advisory on the ground it is not authorized by section 23394.7.

In case No. C070007 Grocers filed a petition for writ of mandate and a request for a stay of the advisory, together with supporting exhibits and a request for judicial notice and supporting briefs. We issued a stay of the effect of the advisory, issued an order granting an alternative writ, and granted the petitioner's request for judicial notice. The Department filed a return to the writ, exhibits in support of respondent's return, a motion in support of judicial notice, and supporting briefs. We granted the Department's motion in support of judicial notice, with accompanying exhibits, consisting of the legislative history of section 23394.7 and declarations, except for exhibit Nos. 4, 7, and 12 (a bill analysis from Grocers; a letter analysis from the author of the legislation, Assemblymember Fiona Ma, to the Department; and a committee staff memorandum to Assemblymember Ma). Grocers filed opposing briefs. Department also submitted exhibits in support of respondent's return to which Grocers filed objections to evidence

---

[5] The Court of Appeal does not have original jurisdiction over a complaint for declaratory relief. The court "ha[s] original jurisdiction [only] in habeas corpus proceedings . . . [and] in proceedings for extraordinary relief in the nature of mandamus, certiorari and prohibition." (Cal. Const., art. VI, § 10.) Section 23090.5 specifies a "writ of mandate" as the proper form of appellate review of an "order, rule, or decision" of the Department. In section 23090.5 "the Legislature intended . . . to provide for judicial review" of actions of the Department "when acting in its administrative rather than in its limited judicial capacity." (*Samson Market Co. v. Kirby* (1968) 261 Cal.App.2d 577, 581.)

5

regarding exhibit Nos. 14 through 16, consisting of the same exhibits denied admission pursuant to respondent's motion in support of judicial notice.[6]

In case No. C070375 Grocers filed a second petition for writ of mandate and complaint for declaratory relief, invoking our original jurisdiction, claiming that the Department was continuing to enforce the advisory, a request for a stay, supporting points and authorities, a request for judicial notice, and a motion to consolidate the case with case No. C070007. We issued an alternative writ, granted the request for judicial notice, issued a stay of the enforcement of the statute on February 21, 2012, and consolidated the cases for all further appellate proceedings except for the retention of their case numbers.

Legislative History of Section 23394.7

Prior to the enactment of section 23394.7 there was no express statutory prohibition of the sale of alcoholic beverages at a customer-operated checkout stand. The Alcoholic Beverage Control Act (§ 23000 et seq.) prohibited the sale of alcohol to minors, and a violation subjected a licensee to the suspension or revocation of a license to sell alcoholic beverages or punishment as a misdemeanor.

In 2011 section 23394.7 was added to the Business and Professions Code by Assembly Bill No. 183 (2011-2012 Reg. Sess.). As introduced in the Assembly on January 25, 2011, the bill provided in relevant part as follows:

"Sec. 2. Section 23394.7 is added to the Business and Professions Code, to read:

"(a) No privileges under an off-sale license shall be exercised by the licensee at any checkstand, where the customer is able to scan and purchase alcoholic beverages using a point-of-sale system with limited or no assistance from an employee of the licensee.

---

[6] The objection is sustained and the motion granted.

6

"(b) For purposes of this section, 'point-of-sale' system means any computer or electronic system used by a retail establishment such as, but not limited to, Universal Product Code scanners, price lookup codes, or an electronic price lookup system as a means for determining the price of the item being purchased by a consumer."

The section was preceded by legislative findings, as follows:

"SECTION 1. The Legislature finds and declares that allowing customers to purchase alcoholic beverages through self-service checkouts:

"(a) Facilitates the purchase of alcoholic beverages by minors.

"(b) Permits customers who are in an advanced state of intoxication to purchase additional alcoholic beverages, in violation of state law.

"(c) Allows for greater theft of alcoholic beverages, thereby depriving the state of tax revenue."

Assembly Bill No. 183 was amended in the Assembly on May 19, 2011, and in the Senate on June 22, 2011, to read as it now appears in the Business and Professions Code:

"No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee's physical premises." (§ 22934.7.)

The amendments retained the same findings as contained in the bill as introduced.

The exhibits admitted as evidence set forth the bill analyses of the measure at each stage of the measure's passage through the Legislature.

The bill analysis of Assembly Bill No. 183 provided to the Assembly Committee on Governmental Organization at its hearing on April 13, 2011, sets forth a summary of the measure, the existing law, and comments. The comments contain a statement by the bill's author, in relevant part, as follows. "[T]his bill takes a precautionary step and precludes the possibility of underage drinking abuses occurring due to the usage of a self-service checkout kiosk, the passive supervision associated with these stations makes them

7

vulnerable to manipulation. By forcing alcohol purchases to be made through a face-to-face transaction *from beginning to end,* the state of California can ensure that the necessary age verification steps are being taken to keep alcohol out of the hands of minors." (Assem. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as introduced Jan. 25, 2011, p. 2, italics added.)

The identical author's comment was attached to the bill analyses provided to the Assembly Committee on Appropriations on May 4 and May 11, 2011, the Assembly on Third Reading, and the Senate Committee on Governmental Organization at its hearing on June 14, 2011, that occurred after the Assembly's amendment set forth above was adopted on May 19, 2011. The arguments in opposition to the measure at the latter hearing by the Senate Committee on Governmental Organization, that followed the May 19, 2011, amendment, state, in relevant part: "Opponents disagree with the findings of the measure and argue that self-service checkout stations have a lock-out or 'freeze' mechanism to preclude any customer from purchasing alcoholic beverages without clerk intervention to verify age (ID) and finalize the purchase. [¶] Opponents state that 'assisted checkout stations are overseen by clerks who must abide by California state law governing the sale of alcoholic beverages. The clerks must either ask for identification from individuals seeking to purchase alcoholic beverages or make a determination that the customer is above the age of 21 and "override" the system by keying in their clerk or other code in order to complete the transaction.' " (Sen. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended May 19, 2011, p. 3.) The opponents' arguments were rejected.

Finally, the bill analysis of the Senate amendments from the Office of Senate Floor Analyses provided to the Senate states the purpose of the legislation. "Current law requires retailers to conduct all sales of cigarettes, spray paints, and some over the

counter drugs through face to face transactions.[7]  This bill will additionally require customers to purchase alcoholic beverages at a check stand *other than a self-service kiosk.*  Retailers claim that self-service checkouts already contain a 'lock-out' mechanism which prohibits a customer from purchasing alcohol until a clerk intervenes and verifies that the customer is over age 21 through the identification of the customer."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended June 22, 2011, pp. 2-3, italics added.)

## DISCUSSION

This case tenders two issues of interpretation arising from the two writs of mandate.  The first concerns whether the advisory's interpretation meets the test of a regulation.  The second concerns whether the advisory's interpretation of section 23394.7 is correct.  We treat these matters separately.

A.  The Administrative Procedures Act

In case No. C070007 Grocers argues that the advisory interpretation is a regulation that is void for lack of compliance with the APA.

The APA requires that an agency comply with the notice and comment procedures for formalizing a regulation and the failure to do so voids the regulation.  (Gov. Code, § 11340.5, subd. (a); *Tidewater, supra*, 14 Cal.4th 557, 568 *ff.*)  "A regulation subject to the APA . . . has two principal identifying characteristics.  [Citation.]  First, the agency must intend its rule to apply generally . . . .  Second, the rule must 'implement, interpret, or make specific the law enforced by . . . [the agency] . . . ." (*Tidewater, supra,* 14 Cal.4th at p. 571.)  The first is a test of the generality of the agency's promulgation; the second is a test of the conformity of the interpretation with the statute interpreted.

---

**7**  Section 22960 prohibits the sale of cigarette or tobacco produce "from a vending machine . . . ."

9

As to the first test, a regulation subject to the APA has been construed to apply "to all generally applicable administrative interpretations of a statute," presumptively including the advisory, whether or not the interpretation is in the form of a regulation and whether or not it is a correct reading of the statute. (*Morning Star, supra*, 38 Cal.4th at p. 335; *Capen v. Shewry* (2007) 155 Cal.App.4th 378, 383 (*Capen*).)

As to the second test, an agency interpretation of a statute is not subject to the APA if it is "the only legally tenable interpretation" of the statute. (Gov. Code, § 11340.9, subd. (f).) That phrase has been construed to apply only if the interpretation is "patently compelled by . . . the statute's plain language." (*Morning Star, supra*, at p. 337.) An interpretation is "patently compelled" when it " 'can reasonably be read only one way' [citation] such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or . . . repetitive of . . . the statute's plain language." (*Id.* at pp. 336-337.) By contrast, "interpretations that arise in the course of case-specific adjudication are not regulations . . . ." (*Tidewater, supra*, 14 Cal.4th at p. 571.)

The advisory is palpably a regulation. It meets the two criteria that define a regulation. It is a generally-applied policy of the agency. It is an interpretation of section 23394.7 that is not "rote, ministerial, or . . . repetitive of . . . the [law's] plain language" because it describes a circumstance to which the statute applies. For this reason the adoption of the advisory without the notice and opportunity to comment required by the APA is invalid.

B. Section 23394.7

As noted, section 23394.7 provides: "No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee's physical premises." The question is whether "customer-operated checkout stand" refers to the stand itself or to the function performed at the stand, and, accordingly, whether the members of petitioner Grocers may sell alcoholic beverages at such a stand.

10

The writ in case No. C070375 challenges the validity of the advisory issued by the Department as in violation of section 23394.7. The section provides that "[n]o privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee's physical premises." (§ 23394.7.) The advisory interprets section 23394.7 as providing that "no alcoholic beverages may be sold through any checkout stand that is enabled to allow operation by the customer at the time the customer's check-out transaction commences or at any point during the check-out process." The advisory thus describes a "customer-operated checkout stand" as a physical device that may be operated in whole or in part by a customer. It expresses the interpretive view of the Department that section 23394.7 prohibits the sale of alcoholic beverages at such a checkout stand even if the sale must be approved by an employee of the licensee in a face-to-face transaction.

Grocers argues that a checkout stand that is programmed to lock the stand's mechanism when an alcoholic beverage is scanned, and that can be unlocked only by an employee of the licensee after a face-to-face approval of the sale, complies with section 23394.7. The Department replies: "Under the Legislature's approach, sellers must directly monitor both the handling and purchase of alcoholic beverages as the product proceeds through checkout. Because direct human monitoring is involved at every stage of the sales transaction – avoiding the serious risk of customers evading so-called automated 'failsafe' devices and the mechanical failure of those devices – minors and intoxicated persons are prevented from obtaining alcoholic beverages." Resolution of the claims turns on whether section 23394.7 refers to the stand itself or the function performed at the stand. We find the answer in the grammar of the section.

Section 23394.7 prohibits the sale of alcoholic beverages "*at* any customer-operated checkout stand . . . ." (Italics added.) The "at" refers to the checkout stand itself, and "customer-operated" modifies the term "checkout stand." The phrase "customer-operated checkout stand" thus describes the <u>kind</u> of checkout stand "at" which

11

the sale of alcoholic beverages is prohibited. By contrast, section 23394.7 does not use qualifying words that specify the function performed at the checkout stand, such as "when" it is being operated by a customer or "unless" a lock-out system is employed.

This reading is supported by legislative findings that justified both the amended and unamended forms of section 23394.7.[8] The findings say that the purpose of the legislation is to preclude theft and that a customer-operated checkout stand "[a]llows for greater theft of alcoholic beverages." This is a circumstance that could occur only if an alcoholic beverage container is concealed and not scanned by the purchaser.[9] However, a lock-out system works only when an alcoholic beverage container is scanned at the checkout stand. If the beverage is concealed it perforce is not scanned.

This reading is also supported by the legislative history of the measure. The Legislature was informed at each stage of its passage, both before and after the amendments in the Assembly and the Senate that produced the current language, in relevant part as follows: "[T]his bill takes a precautionary step and precludes the possibility of underage drinking abuses occurring due to the usage of a self-service checkout kiosk . . . . By forcing alcohol purchases to be made through a face-to-face transaction from beginning to end, the state of California can ensure that the necessary age verification steps are being taken to keep alcohol out of the hands of minors." (Assem. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012

---

[8] "The Legislature finds and declares that allowing customers to purchase alcoholic beverages through self-service checkouts: [¶] (a) Facilitates the purchase of alcoholic beverages by minors. [¶] (b) Permits customers who are in an advanced state of intoxication to purchase additional alcoholic beverages, in violation of state law. [¶] (c) Allows for greater theft of alcoholic beverages, thereby depriving the state of tax revenues." (Assem. Bill No. 183 (2011-2012 Reg. Sess.) §1, as introduced Jan. 25, 2011; *id.* as amended May 19, 2011, § 1; *id.* as amended June 22, 2011, § 1.)

[9] Although this could be said of all checkout stands, the purpose set forth in the finding is nonetheless consistent only with customer-operated checkout stands.

Reg. Sess.) as introduced Jan. 25, 2011, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended June 22, 2011, p. 2, italics added.)  This history is contrary to a functional test.

Grocers argues that the amendment to section 23394.7, that removed language applying the section to a "point-of-sale" system, had the result of exempting such a system from its prohibitions.  We disagree.  The argument is not supported by the grammar of the section nor by the legislative findings and explanation given the Legislature during the section's passage, which remained unchanged.

Thus, notwithstanding that we void the advisory for violation of the APA, we determine that it correctly interprets section 23394.7.  Although the advisory is void, our construction of the section is binding on the Department. (*Tidewater, supra*, 14 Cal.4th at pp. 577-579; *Capen*, supra, 155 Cal.App.4th at pp. 390-393.)

### DISPOSITION

We grant the writ in case No. C070007 voiding the advisory because the interpretation is more than a simple paraphrase of section 23394.7.  We deny the writ in case No. C070375 because the advisory is a correct interpretation of section 23394.7.  The stay of enforcement of section 23394.7, issued on February 21, 2012, having served its purpose, is lifted.  The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)


      BLEASE      , Acting P. J.

Concurring Opinion of Duarte, J.

I concur in the majority opinion, but write separately to explain my analysis.

I

*The First Writ*

The first writ petition before us (3 Civ. No. C070007) raises the question of whether the Advisory was subject to the APA. A regulation subject to the APA has two principal identifying characteristics. "First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must 'implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure.'" (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571.)

An exception to the second identifying characteristic exists where the agency interprets a law in such a manner that the agency's interpretation constitutes "the only legally tenable interpretation of a provision of law." (Gov. Code, § 11340.9, subd. (f).) "[T]he exception for the lone 'legally tenable' reading of the law applies only in situations where the law "can reasonably be read only one way" [citation], such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language." (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 336-337 (*Morning Star*).)

Here, the Advisory is a regulation subject to the APA because it has both required characteristics and the exception to the second is not present. The Advisory is a generally-applied policy of the agency which constitutes an interpretation of section 23394.5 that is not the lone legally tenable reading, that is, it is not "rote, ministerial, . . . patently compelled by, or repetitive of, the statute's plain language." (*Morning Star, supra,* 38 Cal.4th at pp. 336-337.)

1

II

*The Second Writ*

The second writ petition before us (3 Civ. No. C070375) raises the question of whether the Advisory correctly interprets section 23394.7. This court has explained when it is appropriate to remand an interpretive question so that an agency can apply its expertise, and when it is appropriate to resolve the interpretive question ourselves:

> "[A]lthough the court must void an interpretive regulation that does not comply with the APA procedures, it may resolve the ambiguity that gave rise to the agency interpretation if it is not required to defer to the agency construction. [Citations.] In this regard the courts generally distinguish between quasi-legislative rules, which involve the exercise of a delegated lawmaking power and come with a strong presumption of regularity, and an agency's interpretation of a statute, which is due a lesser degree of judicial deference. [Citations.]

> " 'Unlike quasi-legislative rules, an agency's interpretation does not implicate the exercise of a delegated lawmaking power; instead it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts. But because the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this "expertise," expressed as an interpretation . . . that is the source of the presumptive value of the agency's views. An important corollary of agency interpretations, however, is their diminished power to bind. Because an interpretation is an agency's legal opinion, however "expert," rather than the exercise of a delegated legislative power to make law, it commands a commensurably lesser degree of judicial deference.' " (*Capen v. Shewry* (2007) 155 Cal.App.4th 378, 391-392.)

In this case, the Advisory's interpretation of section 23394.7 does not require the application of administrative expertise. The dispositive words that modify "customer operated checkout stand" are ordinary words: "at" and "any." Any ambiguity in the term "customer operated checkout stand" arises from whether the language refers to the stand itself or the function performed at the stand. In this area of interpretation, there is no reason to believe the Department has " 'a comparative interpretive advantage over the

2

courts.'" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12.)

As the majority opinion points out, the word "at" refers to the checkout stand itself. So does the word "any." Generally, "any" means *all* or *every*. "From the earliest days of statehood the courts have interpreted 'any' to be broad, general, and all embracing." (*Burnsed v. State Bd. of Control* (1987) 189 Cal.App.3d 213, 217; see *Emmolo v. Southern Pacific Co*. (1949) 91 Cal.App.2d 87, 91-92 ["the use of the word 'any' in the statute negatives the contention that the statute is restricted"].) The designation "at any" signals that, rather than referring to a *specific* use or function at a *specific* point in time or under a certain set of conditions, the term "customer-operated" is intended to describe the stand's *generally designated* use or function--its kind, type, design, or general nature.

When the plain language of the statute itself is considered together with the legislative findings and history, any ambiguity resolves in favor of the Department's interpretation of the statute.

DUARTE, J.

3

HULL, J., Concurring and Dissenting

I concur in the court's holding that the Industry Advisory issued by the Department of Alcoholic Beverage Control (the Department) on December 23, 2011, in anticipation of the January 1, 2012 effective date of the 2011 amendment to Business and Professions Code section 23394.7 (hereafter the Advisory), is subject to the rulemaking provisions of the Administrative Procedure Act (the APA) (Gov. Code, § 11340 et seq.) and that we must declare the Advisory invalid due to the failure of the Department to comply with the provisions of that act. (Unspecified section references that follow are to the Business and Professions Code.)

As to that portion of the majority opinion that finds that this court nonetheless may uphold the Advisory because we need not defer to the Department's interpretation of the statute and because "the interpretation of section 23394.7 is well within the court's competence," I dissent.

In 2011, the Legislature enacted section 23394.7 which provides: "No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee's physical premises." (Stats. 2011, ch. 726, § 2.)

Section 23394.7 is intended to (1) avoid facilitation of the purchase of alcoholic beverages to minors, (2) prevent customers who are intoxicated from purchasing more alcohol, and (3) prevent the theft of alcoholic beverages. (Stats. 2011, ch. 726, § 1.)

On December 23, 2011, the Department issued the Advisory relating to section 23394.7 "Self-Service Checkouts."

The Advisory read in relevant part:

"The purposes behind this law include preventing minors from purchasing alcoholic beverages, denying obviously-intoxicated patrons from buying alcoholic beverages, and preventing theft of alcoholic beverages, by ensuring that alcoholic beverages are sold only in circumstances in which substantial interaction between the purchaser and the sales clerk occurs.

1

"It is clear that a 'customer-operated checkout stand' means a checkout stand or station that is designated for operation by the customer. Such checkout stands are commonly referred to as 'self serve' or 'self service' checkout stands. While retailers do monitor these customer-operated checkout stands and provide assistance to the customer as necessary to conclude any given transaction, including the purchase of alcoholic beverages, such monitoring or oversight does not satisfy the language and intent of the statute. Accordingly, no alcoholic beverages may be sold through any checkout stand that is enabled to allow operation by the customer at the time the customer's check-out transaction commences or at any point during the check-out process."

Petitioner brings these petitions challenging that interpretation of the statute.

We must first decide whether the Advisory is a regulation subject to the requirements of the APA. The majority concludes that it is and I agree.

A "regulation" within the meaning of the APA is a "rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.)

" 'A regulation subject to the APA . . . has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must "implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency's] procedure." [Citation.]' '' (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333-334 (*Morning Star*), quoting *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 (*Tidewater*).)

It is apparent the Advisory establishes a rule the Department intends to apply generally, declaring, as it does, that the rule applies to all "off-sale licensed premises."

2

It is equally clear that the Advisory establishes a rule that implements and interprets section 23394.7 in that the statute does not define a "customer-operated checkout stand," but the Advisory does. The Advisory declares the statute must be interpreted and implemented to refer to any checkout stand "that is enabled to allow operation by the customer at the time the customer's check-out transaction commences or at any point during the check-out process." The Advisory also declares that, notwithstanding the statutorily undefined term "customer-operated checkout stand," those checkout stands operated by retailers who monitor and provide assistance to the customer as necessary to conclude any given transaction, including the purchase of alcoholic beverages, do not "satisfy the language and intent of the statute." A clearer example of an agency's interpretation of the Legislative intent behind a statute and an agency's determination of the manner in which that intent can be implemented is difficult to imagine. Thus, the Department was required to comply with the provisions of the APA and, having failed to do so, we must declare the Advisory invalid.

The Department attempts to save the rule by invoking that portion of the law that allows a proposed rule to stand even after a violation of the APA if the rule can be said to be the only "legally tenable" reading of the statute. (Gov. Code, §11340.9, subd. (f).)

Government Code section 11340.9, subdivision (f) of the APA provides that the provisions of the APA do not apply if a regulation embodies "the only legally tenable interpretation of a provision of law."

"To evaluate this argument, we consider, as with conventional statutory interpretation, the language and the purpose of the relevant statutes in order to discern the Legislature's intent. [Citation.] That said, whether the [agency] has adopted the sole 'legally tenable' reading of the statute[] represents a different question than whether its interpretation is ultimately correct. As the APA establishes the 'interpretations' typically constitute regulations, it cannot be the case that *any* construction, if ultimately deemed meritorious after a close and searching review of the applicable statutes, falls within the

3

exception provided for the sole 'legally tenable' understanding of the law. Were this the case, the exception would swallow the rule. Rather the exception for the lone 'legally tenable' reading of the law applies only in situations where the law 'can reasonably be read only one way' [citation], such that the agency's actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute's plain language. [Citation.]" (*Morning Star*, *supra,* 38 Cal.4th at pp. 336-337.)

The question is not whether the Department has adopted an interpretation of the statute that is consistent with the law, but whether that interpretation is the only "legally tenable" one, that is, whether its interpretation "follows directly and inescapably from the pertinent provisions of law." (*Morning Star*, *supra* 38 Cal.4th at p. 340.)

The Department, through its advisory, has concluded that prohibiting a sale of alcohol at a "customer-operated checkout stand" as that phrase is used in the statute, means that alcohol may not be sold at a checkout stand "that is enabled to allow operation by the customer at the time the customer's check-out transaction commences or at any point in the check-out process." The Department has concluded that monitoring and oversight of the sale of alcohol at such sites does not satisfy the intent of the statute. But, in my view, that interpretation of the law does not follow "directly and inescapably" from the language of the statute. (*Morning Star, supra*, 38 Cal.4th at p. 340.)

The parties have contrary views regarding the proper interpretation of the statutory language and, ultimately, the Legislative intent underlying its provisions. Both the petitioner and the Department rely on the legislative history of section 23394.7 to argue that its interpretation of the statute is the correct one. On the one hand, the Department argues, for example, that the legislative history proves without question that its interpretation of the statute is the correct one relying in part on language in the third reading in the Assembly of Assembly Bill No. 183 which said the bill represented a "precautionary step and precludes the possibility of underage drinking abuses occurring

4

due to the use of a self-service checkout kiosk, the passive supervision associated with these stations makes them vulnerable to manipulation [*sic*]." (Assem. Bill No. 183, 3d reading May 19, 2011 (2011-1012 Reg. Sess.) p. 3 (hereafter Assembly Bill 183).) That same report went on to say that the Legislature intended to force alcohol purchases to be conducted through a "face-to face transaction from beginning to end." (*Ibid*.)

Petitioner, on the other hand, argues that amendments to the bill show that the Legislature did not intend to preclude the sale of alcohol occurring at a kiosk monitored and controlled by a store employee. They point out that the bill as originally drafted provided that:

"SEC 2. Section 23394.7 is added to the Business and Professions Code, to read:

"(a) No privileges under an off-sale license shall be exercised by the licensee at any checkstand, where the customer is able to scan and purchase alcoholic beverages using a point-of-sale system with limited or no assistance from an employee of the licensee."

"(b) For purposes of this section, 'point-of-sale' system means any computer or electronic system used by a retail establishment such as, but not limited to, Universal Product Code scanners, price lookup codes, or an electronic price lookup system as a means for determining the price of the item being purchased by the customer." (Assem. Bill 183, as introduced Jan. 25, 2011.)

The bill was thereafter amended to read simply: "No privileges under an off-sale license shall be exercised by the licensee at any *customer operated checkout stand*." (Assem. Amend to Assem. Bill 183, May 19, 2011.)

Petitioner argues that this amendment demonstrates "the original version of the legislation contained language that more specifically defined the sales practices to be prohibited. For example, the law would have clearly prohibited retailers from selling alcohol at checkout stands where customers themselves scanned products for checkout 'with limited or no assistance' from a store employee. . . . By replacing the language

5

with the general phrase 'customer-operated checkout stand' the Legislature made the prohibition less stringent, so that retailers can comply with the law by selling alcohol through employee-assisted face-to-face transactions, even at checkout stands with the self-scan technology."

Petitioner also points out that the Legislature specifically did not define what it meant by a sale of alcohol at a "customer-operated checkout stand" when "[i]f the Legislature truly intended [section 23394.7] to mean what [the Department] now interpret[s] it to mean, it easily could have included in the statute, for example, the language contained in [the Advisory]." It did not, of course, arguably leaving to the Department the determination of the regulations that would be necessary to satisfy the goals of the statute.

The ultimate issue is what the Legislature meant by the phrase "self-controlled checkout stand."

Petitioner argues, in part, that "until the customer pays for and receives the alcoholic beverage, the retailer has not exercised any relevant privilege" of conducting an off-sale transaction under its license. This, petitioner argues, along with a retailer's measures to insure that an employee is present to monitor or oversee the actual sale of an alcoholic beverage, halting the transaction when the item scanned at the checkout stand is alcohol and not allowing the transaction to proceed until the purchaser's age, state of sobriety, and intention to pay for the alcohol is determined by a store clerk, satisfies the goals of the statute. At oral argument, petitioner noted that a self-controlled checkout stand which is self-controlled by the customer when the customer is buying, for instance, bread or butter or beans is no longer a "self-controlled" checkout stand when a checkout stand automatically stops a transaction that cannot continue absent a store employee's electronic permission to do so. The place of purchase and the transaction has, at that point, become *store* controlled for purposes of the sale of alcohol.

6

Put slightly differently, petitioner argues that the only transaction, for our purposes here, whereby retailers exercise the "privileges under an off-sale license" within the meaning of section 23394.7 and over which the Department has any authority, is the privilege of selling alcohol and that, if the sale of alcohol is under the supervision and control of a store employee *at the time of the purchase of the alcohol*, just as it would be if the customer had used a traditional, nonautomated checkout lane operated by a store clerk, this privilege is not being exercised at a "self-controlled" checkout stand within the meaning of the statute.

We are not here required to determine whether petitioner's reading of the statute is the correct one. It may or it may not be. But the question at this juncture is whether the petitioner's reading of the statute is "palpably unreasonable." (*Morning Star*, *supra*, 38 Cal.4th at 338.) I think that it is not.

If called upon to do so, a court will eventually decide which party's view of the Legislative intent behind the statute is the correct one, but, again, that is not the question before us now. The question is whether the Department's interpretation of the statute is the only "legally tenable" reading of the statute. While the petitioner's arguments may ultimately prove to be wrong, their interpretation of the statute is not "palpably unreasonable."

I part company with the lead opinion when it concludes that the court "need not defer to the Department's interpretation because the interpretation of section 23394.7 is well within the court's competence." (Lead opn., *ante*, at p. 3.) Under some circumstances, a court may interpret and apply statutory language in the first instance without deferring to an agency's interpretation. (See *Tidewater, supra,* 14 Cal.4th 557; *Capen v. Shewry* (2007) 155 Cal.App.4th 378.) But, as explained in *Morning Star*, that is the appropriate course only where an invalid regulation promulgated by an agency is a "simple interpretive policy" and where the court is in "as good a position as [the agency], or almost so, to interpret the underlying [rule]." (*Morning Star, supra,* 38 Cal.4th at pp.

7

340-341.) But where the statutory scheme calls for the application of administrative expertise, the matter should be returned to the agency for its interpretation of the statute in the first instance. (*Id.* at p. 341.)

In my view, the latter course is the proper course under the circumstances presently before us. It should be left to the Department, in proceedings that conform to the requirements of the Administrative Procedure Act, initially to determine the proper regulations necessary to carry forward the intent of the Legislature when it enacted section 23394.7. Whether, for instance, as petitioner suggests, the intent of the statute can be satisfied with a procedure whereby the retailer, when an otherwise self-controlled checkout stand halts the "self-controlled" aspect of the process and gives full control of the purchase of alcohol only to the retailer by checking a buyer's identification and entering age information into the system before the transaction is allowed to go forward, or whether, as the Department suggested at oral argument, such a system could be manipulated in a way that would frustrate the intent of the statute, is one example of a matter best left initially to agency expertise with full input from those persons whom the regulations will affect. This court is not in as good a position, or almost so, to make those determinations. "To transfer to the courts what are properly agency responsibilities as to these and similar matters would frustrate the intent of the Legislature in enacting the APA." (*Morning Star, supra,* 38 Cal.4th at p. 341.)

"One purpose of the APA is to ensure that those persons or entities whom a regulation will affect have a voice in its creation (*Armistead v. State Personnel Board* (1978) 22 Cal.3d 198, 204-205), as well as notice of the law's requirements so that they can conform their conduct accordingly (*Ligon v. State Personnel Bd.* (1981) 123 Cal.App.3d 583, 588). The Legislature wisely perceived that the party subject to regulation is often in the best position, and has the greatest incentive, to inform the agency about possible unintended consequences of a proposed regulation. Moreover, public participation in the regulatory process directs the attention of agency policymakers

8

to the public they serve, thus providing some security against bureaucratic tyranny.  (See *San Diego Nursery Co. v. Agricultural Labor Relations Bd.* (1979) 100 Cal.App.3d 128, 142-143.)"  (*Tidewater, supra,* 14 Cal.4th at pp. 568-569.)

I would declare the Advisory invalid, order that our stay order remain in effect pending action by the Department consistent with the APA and return the matter to the Department for its further consideration under the provisions of the APA.


                                                    HULL           , J.