DUARTE, J., Concurring.
I concur in the lead opinion, but write separately to explain my analysis.
I

The First Writ

The first writ petition before us (No. C070007) raises the question of whether the advisory was subject to the APA (Administrative Procedure Act; *1077 Gov. Code, § 11340 et seq.). A regulation subject to the APA has two principal identifying characteristics. “First, the agency must intend its rule to apply generally, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. [Citation.] Second, the rule must ‘implement, interpret, or make specific the law enforced or administered by [the agency], or . . . govern [the agency’s] procedure.’ ” (Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296].)
An exception to the second identifying characteristic exists where the agency interprets a law in such a manner that the agency’s interpretation constitutes “the only legally tenable interpretation of a provision of law.” (Gov. Code, § 11340.9, subd. (f).) “[T]he exception for the lone ‘legally tenable’ reading of the law applies only in situations where the law ‘can reasonably be read only one way’ [citation], such that the agency’s actions or decisions in applying the law are essentially rote, ministerial, or otherwise patently compelled by, or repetitive of, the statute’s plain language.” (Morning Star Co. v. State Bd. of Equalization (2006) 38 Cal.4th 324, 336-337 [42 Cal.Rptr.3d 47, 132 P.3d 249] (Morning Star).)
Here, the advisory is a regulation subject to the APA because it has both required characteristics and the exception to the second is not present. The advisory is a generally applied policy of the agency which constitutes an interpretation of Business and Professions Code section 23394.7 (section 23394.7) that is not the lone legally tenable reading, that is, it is not “rote, ministerial, . . . patently compelled by, or repetitive of, the statute’s plain language.” (Morning Star, supra, 38 Cal.4th at pp. 336-337.)
n

The Second Writ

The second writ petition before us (No. C070375) raises the question of whether the advisory correctly interprets section 23394.7. This court has explained when it is appropriate to remand an interpretive question so that an agency can apply its expertise, and when it is appropriate to resolve the interpretive question ourselves:
“[Although the court must void an interpretive regulation that does not comply with the APA procedures, it may resolve the ambiguity that gave rise to the agency interpretation if it is not required to defer to the agency construction. [Citations.] In this regard the courts generally distinguish between quasi-legislative rules, which involve the exercise of a delegated *1078 lawmaking power and come with a strong presumption of regularity, and an agency’s interpretation of a statute, which is due a lesser degree of judicial deference. [Citations.]
“ ‘Unlike quasi-legislative rules, an agency’s interpretation does not implicate the exercise of a delegated lawmaking power; instead it represents the agency’s view of the statute’s legal meaning and effect, questions lying within the constitutional domain of the courts. But because the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this “expertise,” expressed as an interpretation . . . that is the source of the presumptive value of the agency’s views. An important corollary of agency interpretations, however, is their diminished power to bind. Because an interpretation is an agency’s legal opinion, however “expert,” rather than the exercise of a delegated legislative power to make law, it commands a commensurably lesser degree of judicial deference.’ ” (Capen v. Shewry (2007) 155 Cal.App.4th 378, 391-392 [65 Cal.Rptr.3d 890].)
In this case, the advisory’s interpretation of section 23394.7 does not require the application of administrative expertise. The dispositive words that modify “customer-operated checkout stand” are ordinary words: “at” and “any.” Any ambiguity in the term “customer-operated checkout stand” arises from whether the language refers to the stand itself or the function performed at the stand. In this area of interpretation there is no reason to believe the Department of Alcoholic Beverage Control has “ ‘a comparative interpretive advantage over the courts.’ ” (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 12 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)
As the lead opinion points out, the word “at” refers to the checkout stand itself. So does the word “any.” Generally, “any” means all or every. “From the earliest days of statehood the courts have interpreted ‘any’ to be broad, general, and all embracing.” (Burnsed v. State Bd. of Control (1987) 189 Cal.App.3d 213, 217 [234 Cal.Rptr. 316]; see Emmolo v. Southern Pacific Co. (1949) 91 Cal.App.2d 87, 92 [204 P.2d 427] [“the use of the word ‘any’ in the statute negatives the contention that the statute is restricted . . .”].) The designation “at any” signals that, rather than referring to a specific use or function at a specific point in time or under a certain set of conditions, the term “customer-operated” is intended to describe the stand’s generally designated use or function—its kind, type, design, or general nature.
When the plain language of the statute itself is considered together with the legislative findings and history, any ambiguity resolves in favor of the department’s interpretation of the statute.